## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, | ) ) ) | Case No.: |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| McDONALD'S CORPORATION; McDONALD'S USA, LLC; CLARK MANAGEMENT, LLC; D.A.L.L. ANOINTED, INC.; JANN RESTAURANT, INC.; KGK MANAGEMENT, INC.; MMJ ENTERPRISES, INC.; R&G MANAGEMENT SERVICES, INC.; ALLISON ARTHUR; KYLE ARTHUR; MA-KYEIA DANIELS; TIFFANY GOMEZ; LaSHUNDA HICKS; KY'ARON MANNING; BRETT PRATHER; DAVID TRUETNER; REGINALD LARK; TIM BELLEFEUILLE; HALEIGH RAE BESINGER; HANNAH CAPPERINO; XAVIER CASILLAS; ERIN CASTREJON; BRANDON CHAPLES; CREIGHTON COLSON; JAMES COWAN; SHAYNE EMERY; STACIE FERGUSON; ANDREA FRANKLIN; SARAH FURLONG; ANTHONY GANT; IVAN GONZALEZ; OSCAR GUTIERREZ; ALONZO JOHNSON; TIFFANY JOHNSTON; ALEXANDRIA KRISPIN; CHARLENE LYBARGER; GABRIELA MIZE; ALYSSA MOORE; BRIANNA MOORE; WALLY NICHOLS; KRISTEN OETTLE; THOMAS PEARCE; THADDEUS PHILLIPS; AARON EMANUEL RIVERA; BRYTON ROACH; PHILLIP ROSS; JOSUE SALGADO; JEFF SANSONE; KELSI SCHWARTZ; SHANE SNYDER; JOHNATHIN SUTTON; RHONDA TANDY; MELISSA VITTORELLI; MICHAEL WARREN; AARON WEISS; and SHAMEKA WILLIAMS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

1

259285032v.1

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff, Homeland Insurance Company of New York ("Homeland"), by its attorneys, Greta A. Matzen of Intact U.S. Coverage Litigation Group, Intact Insurance Specialty Solutions, and Michael J. Duffy of Wilson Elser Moskowitz Edelman & Dicker, LLP, and for its Complaint for Declaratory Judgment against Defendants, McDonald's USA, LLC, McDonald's Corporation, Clark Management, LLC, D.A.L.L. Anointed, Inc., Jann Restaurant, Inc., R&G Management Services, Inc., KGK Management, Inc., and MMJ Enterprises, Inc. ("Defendants"),[1] and alleges as follows:

## INTRODUCTION

1.      Homeland seeks a judicial declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Homeland has no duty to defend or indemnify Defendants, McDonald's Corporation and McDonald's USA, LLC (collectively, "McDonald's"), in addition to McDonald's franchisees, Clark Management, LLC, D.A.L.L. Anointed, Inc., Jann Restaurant, Inc., R&G Management Services, Inc., KGK Management, Inc., and MMJ Enterprises, Inc. (collectively, "Franchisees"), in two underlying suits styled, *Reginald Lark et. al. v. McDonald's USA, LLC; McDonald's Corporation; et. al.,* Case No. 17-L-559, currently pending in the Twentieth Judicial Circuit Court, St. Clair County, Illinois (the "Lark Action") and *Allison Arthur et. al. v. McDonald's LLC USA, LLC*; et. al., Case No. 20-L-0891, currently pending in the Twentieth Judicial Circuit Court, St. Clair County, Illinois (the "Arthur Action"), (collectively, the "Underlying Actions").  A true and

---

[1] Plaintiffs in the Underlying Actions are named as nominal defendants, because they are interested parties to the insurance coverage dispute for purposes of being bound by the declaratory judgment.

259285032v.1

correct copy of the Lark Action complaint is attached hereto as Exhibit A. A true and correct copy of the Arthur Action complaint is attached hereto as Exhibit B.

2. McDonald's tendered its defense to Homeland in a letter dated February 23, 2021 (the "McDonald's Tender Letter"), demanding that Homeland acknowledge and undertake all insuring obligations, including any duty to defend or indemnify McDonald's in the Underlying Actions, under all applicable policies that Homeland[2] issued to the Franchisees. A true and correct copy of the McDonald's Tender Letter is attached hereto as Exhibit C.

3. The Underlying Actions are based on the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et. seq., ("BIPA"). Plaintiffs in the Underlying Actions (the "Underlying Plaintiffs") seek monetary damages from McDonald's, pursuant to BIPA, alleging that McDonald's illegally collected, stored, and used Underlying Plaintiffs' and others similarly situated individuals' biometric identifiers and biometric information ("biometrics") without Underlying Plaintiffs' informed written consent. Exhibits A and B.

4. Homeland responded to McDonald's Tender Letter on July 6, 2021, in its coverage position letter, denying any duty to defend or indemnify McDonald's in the Underlying Actions, because the damages at issue do not trigger coverage under the insuring agreements of the relevant Homeland liability policies, and pursuant to certain policy exclusions (the "Homeland Coverage Position Letter"). A true and correct copy of the Homeland Coverage Position Letter is attached hereto Exhibit D.

5. In this coverage litigation, Homeland also seeks a declaratory judgment that Homeland has no duty to defend or indemnify the Franchisees in the Underlying Actions, because

---

[2] In the McDonald's Tender Letter, counsel incorrectly identified OneBeacon as the underwriting entity that issued the relevant liability policies. Homeland is the underwriting entity that issued the liability policies to Franchisees.

259285032v.1

the damages at issue in the Underlying Actions do not trigger coverage under the relevant Homeland liability policies. Notwithstanding the terms of the insuring agreements, which do not afford coverage for the damages at issues in the Underlying Actions, Homeland also seeks a judicial declaration that certain policy exclusions preclude coverage. Because Franchisees are defendants in the Underlying Actions, Homeland also seeks the aforementioned judicial declaration as to the Franchisees, in the interest of judicial economy and a complete resolution of all outstanding coverage issues related to the relevant Homeland policies and the Underlying Actions.

## PARTIES

6.  Homeland is incorporated under the laws of New York and has its principal place of business located in Plymouth, Minnesota. Homeland is authorized to do business in Illinois and elsewhere.

7.  McDonald's Corporation is a Delaware corporation with its principal place of business located in Oak Brook, Illinois.

8.  McDonald's USA, LLC is a Delaware limited liability corporation with its principal place of business located in Springfield, Illinois and its member is a citizen of Illinois.

9.  Clark Management, LLC is an Illinois limited liability corporation with its principal place of business in Peoria, Illinois and its members are Illinois citizens.

10.  D.A.L.L. Anointed, Inc. is an Illinois corporation with its principal place of business in Hammond, Illinois.

11.  Jann Restaurant, Inc. is an Illinois corporation with its principal place of business in Lincoln, Illinois.

4

12.     KGK Management, Inc. is an Illinois corporation with its principal place of business in Aurora, Illinois.

13.     MMJ Enterprises, Inc. is an Illinois corporation with its principal place of business in Bloomington, Illinois.

14.     R&G Management Services, Inc. is an Illinois corporation with its principal place of business in Wood Dale, Illinois.

15.     Allison Arthur is an Illinois citizen who worked in a McDonald's restaurant located at 103 Dettro Drive, Mattoon, Illinois 61938.

16.     Kyle Arthur is an Illinois citizen who worked in a McDonald's restaurant located at 103 Dettro Drive, Mattoon, Illinois 61938.

17.     Ma-Kyeia Daniels is an Illinois citizen who worked in a McDonald's restaurant located at 1153 N. Green Mount Road, Belleville, Illinois 62221.

18.     Tiffany Gomez is an Illinois citizen who worked in a McDonald's restaurant located at 142 Riverboat Center Drive, Joliet, Illinois 60432.

19.     LaShunda Hicks is an Illinois citizen who worked in a McDonald's restaurant located at 1153 N. Green Mount Road, Belleville, Illinois 62221.

20.     Ky'Aron Manning is an Illinois citizen who worked in a McDonald's restaurant located at 109 E. Highway 50, O'Fallon, Illinois 62269.

21.     Brett Prather is an Illinois citizen who worked in a McDonald's restaurant located at 103 South Creek Drive, Manteno, Illinois 60950.

22.     David Truetner is an Illinois citizen who worked in a McDonald's Restaurant located at 11421 S. Halsted, Chicago, Illinois 60628.

259285032v.1

23.     Reginald Lark is an Illinois citizen who worked in a McDonald's Restaurant located in Swansea, Illinois.

24.     Tim Bellefeuille is an Illinois citizen who worked in a McDonald's restaurant located at 1610 E. Empire, Bloomington, Illinois 61701.

25.     Haleigh Rae Besinger is an Illinois citizen who worked in a McDonald's restaurant located at 4007 W. Barring Terrace, Peoria, Illinois 61615.

26.     Hannah Capperino is an Illinois citizen who worked in a McDonald's restaurant located at 11241 W. 159th Street, Orland Park, Illinois 60467.

27.     Xavier Casillas is an Illinois citizen who worked in a McDonald's restaurant located at 2400 W. Lincoln Highway, Olympia Fields, Illinois 60461.

28.     Erin Castrejon is an Illinois citizen who worked in a McDonald's restaurant located at 1441 Kishwaukee St., Rockford, Illinois 61104.

29.     Brandon Chaples is an Illinois citizen who worked in a McDonald's restaurant located at 302 South Route 31, McHenry, Illinois 60050.

30.     Creighton Colson is an Illinois citizen who worked in a McDonald's restaurant located at 4805 Broadway Street, Quincy, Illinois 62305.

31.     James Cowan is an Illinois citizen who worked in a McDonald's restaurant located at 3433 Avenue of The Cities, Moline, Illinois 61265.

32.     Shayne Emery is an Illinois citizen who worked in a McDonald's restaurant located at 3250 S. 6th Street, Springfield, Illinois 62701.

33.     Stacie Ferguson is an Illinois citizen who worked in a McDonald's restaurant located at 321 N. Morton, Morton, Illinois 61550.

6

34.     Andrea Franklin is an Illinois citizen who worked in a McDonald's restaurant located at 161 Spinder Drive, East Peoria, Illinois 61611.

35.     Sarah Furlong is an Illinois citizen who worked in a McDonald's restaurant located at 4301 W. Wabash Avenue, Springfield, Illinois 62711.

36.     Anthony Gant is an Illinois citizen who worked in a McDonald's restaurant located at 100 N. Bolingbrook Drive, Bolingbrook, Illinois 60440.

37.     Ivan Gonzalez is an Illinois citizen who worked in a McDonald's restaurant located at 520 Ramada Blvd, Collinsville, Illinois 62234.

38.     Oscar Gutierrez is an Illinois citizen who worked in a McDonald's restaurant located at 3249 Belvidere Road, Park City, Illinois 60085.

39.     Alonzo Johnson is an Illinois citizen who worked in a McDonald's restaurant located at 2045 Madison Avenue, Granite City, Illinois 62040.

40.     Tiffany Johnston is an Illinois citizen who worked in a McDonald's restaurant located at 525 Brock Drive, Bloomington, Illinois 61701.

41.     Alexandria Krispin is an Illinois citizen who worked in a McDonald's restaurant located at 930 W. Riverside Boulevard, Rockford, Illinois 61103.

42.     Charlene Lybarger is an Illinois citizen who worked in a McDonald's restaurant located at 1006 Purnell Drive, Mahomet, Illinois 61853.

43.     Gabriela Mize is an Illinois citizen who worked in a McDonald's restaurant located at 1134 N. Main Street, Monmouth, Illinois 61462.

44.     Alyssa Moore is an Illinois citizen who worked in a McDonald's restaurant located at 1402 SE Third Street, Aledo, Illinois 61231.

45.     Brianna Moore is an Illinois citizen who worked in a McDonald's restaurant located at 1134 N. Main Street, Monmouth, Illinois 61462.

46.     Wally Nichols is an Illinois citizen who worked in a McDonald's restaurant located at 3195 North Vermilion Street, Danville, Illinois 61832.

47.     Kristen Oettle is an Illinois citizen who worked in a McDonald's restaurant located at 5511 Godfrey Road, Godfrey, Illinois 62035.

48.     Thomas Pearce is an Illinois citizen who worked in a McDonald's restaurant located at 1402 SE Third Street, Aledo, Illinois 61231.

49.     Thaddeus Phillips is an Illinois citizen who worked in a McDonald's restaurant located at 1700 Division St, Morris, Illinois 60450.

50.     Aaron Emanuel Rivera is an Illinois citizen who worked in a McDonald's restaurant located at 339a Douglas Road, Oswego, Illinois 60543.

51.     Bryton Roach is an Illinois citizen who worked in a McDonald's restaurant located at 2 Ohren Drive, Litchfield, Illinois 62056.

52.     Phillip Ross is an Illinois citizen who worked in a McDonald's restaurant located at 1156 Vaughn Road, Wood River, Illinois 62095.

53.     Josue Salgado is an Illinois citizen who worked in a McDonald's restaurant located at 1402 SE Third Street, Aledo, Illinois 61231.

54.     Jeff Sansone is an Illinois citizen who worked in a McDonald's restaurant located at 4946 N. Milwaukee Avenue, Chicago, Illinois 60630.

55.     Kelsi Schwartz is an Illinois citizen who worked in a McDonald's restaurant located at 1013 Court Street, Pekin, Illinois 61554.

56.     Shane Snyder is an Illinois citizen who worked in a McDonald's restaurant located at 501 S Grand Avenue East, Springfield, Illinois 62703.

57.     Johnathin Sutton is an Illinois citizen who worked in a McDonald's restaurant located at 2100 N. Dirksen Parkway, Springfield, Illinois 62702.

58.     Rhonda Tandy is an Illinois citizen who worked in a McDonald's restaurant located at 1013 Court Street, Pekin, Illinois 61554.

59.     Melissa Vittorelli is an Illinois citizen who worked in a McDonald's restaurant located at 3020 E. 8th Road, Utica, Illinois 61373.

60.     Michael Warren is an Illinois citizen who worked in a McDonald's restaurant located at 810 E. Broadway, Centralia, Illinois 62801.

61.     Aaron Weiss is an Illinois citizen who worked in a McDonald's restaurant located at 300 Columbia Center, Columbia, Illinois 62236-9803.

62.     Shameka Williams is an Illinois citizen who worked in a McDonald's restaurant located at 1380 W. Lake Street, Chicago, Illinois 60607.

## JURISDICTION AND VENUE

63.     This Court has subject matter jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

64.     An actual justiciable controversy exists between and among Homeland and Defendants within the meaning of 28 U.S.C. § 2201 regarding whether Homeland has a duty to defend and indemnify Defendants in the Underlying Actions.

65.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

9

66.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to this suit occurred in this judicial district.

## UNDERLYING ACTIONS

### A.     Lark Action

67.     Plaintiffs in the Lark Action (the "Lark Plaintiffs") seek monetary damages pursuant to the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq. ("BIPA") and allege that Defendants[3] illegally collected, stored and used the Lark Plaintiffs' biometric identifiers without first obtaining informed written consent from Lark Plaintiffs in violation of BIPA.  Exhibit A, ¶1.

68.     Lark Plaintiffs allege that BIPA, 740 ILCS 14/15(a) and (b), prohibits a private entity, such as McDonald's, from obtaining and/or possessing an individual's biometrics unless it: (1) informs that person in writing that the biometric identifier will be collected or stored; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used; (3) receives a written release from the person for the collection of his or her biometric identifiers or information; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information.  *Id.* at ¶3.

69.     Lark Plaintiffs maintain that Defendants have violated BIPA by actively collecting, storing and using their biometric identifiers without first providing notice or obtaining informed written consent.  It is likewise alleged that Defendants failed to publish data retention policies for the biometric identifier retention, also in violation of BIPA.  *Id.* at ¶4.

---

[3] For purposes of the Lark Action, Defendants include McDonald's and Franchisees, Clark Management LLC, Jann Restaurant, Inc. and MMJ Enterprises, Inc.  These Franchisees are Homeland insureds and defendants in the Lark Action.  Lark Plaintiffs claim to be employees or former employees of McDonald's and the Franchisees.

70.     Defendants allegedly employ or employed the Lark Plaintiffs and collected, captured or stored Lark Plaintiffs' biometric information, which was and is allegedly used by McDonald's for the purpose of tracking time and attendance while Lark Plaintiffs worked at McDonald's. *Id.* at ¶¶ 6-46.

71.     It is alleged that approximately 90 percent of McDonald's restaurants in the United States are franchise restaurants, and the remaining ten percent are maintained and managed directly by McDonald's. According to Lark Plaintiffs, McDonald's greatly influences its franchisees' hiring practices and operations, including influence and control over handling of biometric information. *Id.* at ¶49.

72.     Defendants are alleged to share common BIPA liability, because each Defendant is part of the "McDonald's System," and as such, all Defendants are purportedly "[o]ffending parties within the meaning of BIPA, 740 ILCS 14/20." *Id.* at ¶82.

73.     Lark Plaintiffs refer to the "McDonald's Traditional Franchise Agreement," to further define the "McDonald's System," which explains:

**1.      *Nature and Scope of Franchise.***

(a)     McDonald's operates a restaurant system ("McDonald's System"). The McDonald's System is a comprehensive system for the ongoing development, operation, and maintenance of McDonald's restaurant locations . . . and includes proprietary rights in certain valuable trade names, service marks, and trademarks . . . . methods of . . . operation control . . . and manuals covering business practices and policies.

According to the Lark Plaintiffs, the McDonald's System also required that Franchisees adhere to standards, including the uniform operating procedures and equipment, as follows:

**1.      *Nature and Scope of Franchise . . .***

(c)     The foundation of the McDonald's System and the essence of this Franchise is the adherence by Franchisee to standards and policies of McDonald's providing for the uniform operation of all McDonald's restaurants within the McDonald's System including, but not limited to . . . the use of only prescribed

11

> equipment . . . . [T]he establishment and maintenance of a close personal working relationship with McDonald's in the conduct of Franchisee's McDonald's restaurant business, Franchisee's accountability for performance of the obligations contained in this Franchise, and Franchisee's adherence to the tenets of the McDonald's System constitute the essence of this Franchise.

*Id.* at ¶¶83-84.

74.     Lark Plaintiffs allege that McDonald's and the Franchisees cooperated and acted jointly, because doing so was mutually beneficial, and the uniformity and control of equipment and processes was essential to McDonald's branding. *Id.* at ¶¶92-94.

75.     McDonald's and the Franchisees allegedly cooperated jointly and in unison to improperly collect, capture, and otherwise handle workers' biometric identifiers or biometric information across the McDonald's System in Illinois. *Id.* at ¶¶92-94.

76.     Lark Plaintiffs contend that while not every McDonald's location in the McDonald's System employed biometric capture devices, it is no coincidence that nearly every location in the McDonald's System used the Digital Persona U.are.U 4500 Fingerprint Reader to capture the workers' biometric information. *Id.* at ¶97.

77.     Lark Plaintiffs allege, based on information and belief, that all McDonald's undertake operations, including the collection of biometric information with McDonald's proprietary software, which McDonald's considers its own intellectual property, and that McDonald's would not permit non-approved software to be employed in the McDonald's System. *Id.* at ¶98.

78.     All Defendants are alleged to be "offending parties" within the meaning of BIPA, 740 ILCS 14/20, across the McDonald's System, and without regard to whether any given McDonald's location is corporate or franchise. *Id.* at ¶¶104-105.

79. Lark Plaintiffs argue in the alternative that McDonald's exercised and continues to exercise control over the Franchisees and their respective operations, including the facts and circumstances giving rise to the Lark Action, such that McDonald's is jointly and severally liable for violations of BIPA occurring at any Illinois McDonald's, without further qualification, whether through operation of *respondeat superior*, the law of agency, *alter ego*, common law, joint and several liability, joint employer, or other grounds. *Id.* at ¶106.

80. Lark Plaintiffs further allege that McDonald's restaurant locations throughout Illinois utilized a finger or handprint reader to measure employees' time and attendance as the primary method to "clock-in" and "-out" at many but not all locations throughout Illinois. For all present and past employees at those McDonald's locations, Defendants have required that their employees provide biometric information, specifically a scan of their respective finger and/or handprints. *Id.* at ¶122.

81. Lark Plaintiffs allege that as early as October 11, 2017, McDonald's risk manager sent correspondence to the Franchisees to inform the Franchisees either using an "eSmartClock" or that were going to begin using an "eSmartClock" that allows employees to punch in and out using their fingerprint, of BIPA and the Franchisees' potential exposure to fines and penalties for failure to comply with BIPA. *Id.* at ¶100.

82. Lark Plaintiffs likewise allege that as early as October 11, 2017, McDonald's Risk Manager offered the services of LaPointe Law firm, in relation to BIPA exposure, to provide "employment law advice through the Helpline, which is part of RSUI's National EPLI Program." *Id.*

83. Lark Plaintiffs maintain, upon information and belief, that Defendants are violating BIPA in collecting and storing the biometric information of their employees at the restaurant

13

locations that utilize biometric scanners (finger/hand print readers), because Defendants have not first informed employees in writing of the specific purpose and length of term for which their respective biometric identifiers or biometric information will be collected, stored, and/or used; nor are Defendants first securing written consent from each employee. *Id*. at ¶123.

84.     It is further alleged that Defendants' violations of BIPA are not occurring at just one location, nor are they being perpetrated in only one geography. Defendants' violations of BIPA are allegedly occurring throughout the state of Illinois and have been occurring since Defendants' implementation of biometric scanners. *Id*. at ¶124.

*(a)*     ***Allegations Against McDonald's***

85.     McDonald's is alleged to have violated 740 ILCS 14/15(a) by failing to properly establish a publicly available biometric information collection and retention policy. Lark Plaintiffs assert that McDonald's is a "private entity" that collects biometric information from McDonald's workers, and is thus governed by BIPA. Lark Plaintiffs maintain that BIPA requires private entities in possession of biometric information to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information, when either the initial purpose for collecting or obtaining such identifiers or information has been satisfied, or within three years of the individual's last interaction with the private entity, whichever occurs first." *Id.* at ¶¶135-141 & ¶¶194-199.

86.     Lark Plaintiffs allege they are Illinois citizens who have had their "biometric information" collected and stored by McDonald's or its agents, by copying or recording of Lark Plaintiffs' respective fingerprints or palm scans, and possibly other biometric data points. It is also alleged that McDonald's did not comply with its established retention schedule and destruction guidelines, as required by 740 ILCS 14/15(a). Lark Plaintiffs allege that McDonald's violated

14

Lark Plaintiffs' respective rights to control their own biometric information. *Id.* at ¶¶143-149 & ¶¶201-207.

87.     Lark Plaintiffs assert that McDonald's is a private entity that collected and stored certain "biometric information" from its workers by copying or recording their respective fingerprints, palm scans and possibly other data. Lark Plaintiffs likewise assert that McDonald's collected its workers' biometric information, which is a violation of BIPA unless it first "1) [i]nforms the subject…in writing that biometric identifier or biometric information is [was] being collected or stored…. 740 ICS 14/15(b)(1)." McDonald's allegedly violated BIPA and violated Lark Plaintiffs' right to control their own biometric information by not informing Lark Plaintiffs in writing that the biometric information was being collected. *Id.* at ¶¶151-156 & ¶¶209-214.

88.     Lark Plaintiffs assert that McDonald's is a private entity that collected and stored certain "biometric information" from its workers by copying or recording their respective fingerprints, palm scans and possibly other data. Lark Plaintiffs likewise assert that McDonald's collected its workers' biometric information, which is a violation of BIPA unless it first "2) [i]nforms the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used. 740 ILCS 14/15(b)(2)." McDonald's allegedly violated BIPA and violated Lark Plaintiffs' rights to control their own biometric information by not informing Lark Plaintiffs in writing of the specific purpose and length of time for which the Lark Plaintiffs' biometric identifiers were being stored or used. *Id.* at ¶¶158-163 & ¶¶216-221.

89.     Lark Plaintiffs assert that McDonald's is a private entity that collected and stored certain "biometric information" from its workers by copying or recording their respective fingerprints, palm scans and possibly other data. Lark Plaintiffs likewise assert that McDonald's

collected its workers' biometric information, which is a violation of BIPA unless McDonald's first "(3) [r]eceives a written release executed by the subject of the biometric information….. 740 ILCS 14/15(b)(3)." McDonald's allegedly violated BIPA and violated Lark Plaintiffs' rights to control their own biometric information by not obtaining a written release from Lark Plaintiffs before collecting the biometric information. *Id.* at ¶¶165-170 & ¶¶223-228.

90.     Lark Plaintiffs assert that McDonald's is a private entity that collected and stored certain "biometric information" from its workers by copying or recording their respective fingerprints, palm scans and possibly other biometric data points. Lark Plaintiffs likewise assert that McDonald's collected its workers' biometric information and subsequently violated BIPA when it "[d]isclosed, redisclosed, or disseminated the biometric information of plaintiffs [Lark Plaintiffs] and the class members through, and/or among others, including but not limited to other McDonald's entities or persons associated with McDonald's. 740 ILCS 114/15(d)." McDonald's also allegedly violated BIPA and aggrieved each Lark Plaintiff by violating his or her respective rights to control his or her own biometric information. *Id.* at ¶¶172-178 & ¶¶230-236.

91.     Lark Plaintiffs allege that McDonald's is a private entity that collects biometric information from McDonald's workers. Lark Plaintiffs also assert that McDonald's violated BIPA and violated Lark Plaintiffs' rights by failing to store, transmit and/or protect from full disclosure Lark Plaintiffs' biometric identifiers and biometric information using the reasonable standard of care within its industry standard as required by 740 ILCS 14/15(e)(1). *Id.* at ¶¶ 180-185 & ¶¶ 238-243.

92.     Lark Plaintiffs assert that McDonald's is a private entity that collected and stored certain "biometric information" from Lark Plaintiffs by copying or recording their respective fingerprints, palm scans and possibly other data. Lark Plaintiffs likewise assert that McDonald's

16

collected its workers' biometric information and subsequently violated BIPA when it failed to collect and store Lark Plaintiffs' information in a "[m]anner that was the same as or more protective than the manner in which it stores, transmits, and protects other confidential and sensitive information, as required by 70 ILCS 14/15(e)(2)."  McDonald's likewise allegedly violated BIPA and aggrieved each Lark Plaintiff by violating their rights to control their own biometric information.  *Id.* at ¶¶187-192 & ¶¶245-250.

93.     In all counts, Lark Plaintiffs seek certification of the Lark Action as a class action; a declaration that McDonald's violated BIPA; 740 ILCS 14/1 et seq., injunctive and equitable relief to protect the Lark Plaintiffs' interests; statutory damages of $5,000 for each intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000 per violation pursuant to 740 ILCS 14/20(1) in the event the court finds that McDonald's BIPA violations were negligent; reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3); and other relief deemed appropriate in the premises.

### (b)    *Allegations Against Franchisees*[4]

94.     Lark Plaintiffs allege that Franchisees violated 740 ILCS 14/15(a) by failing to properly establish a publicly available biometric information collection and retention policy.  Lark Plaintiffs assert that Franchisees are private entities that collect biometric information from McDonald's workers, and are thus governed by BIPA. Lark Plaintiffs also maintain that BIPA requires private entities in possession of biometric information to "[d]evelop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting

---

[4] For purpose of the Lark Action, the Franchisees are Clark Management LLC, Jann Restaurant, Inc., and MMJ Enterprises, Inc.  These Franchisees are Homeland insureds and defendants in the Lark Action.  Lark Plaintiffs claim to be employees or former employees of both McDonald's and these Franchisees.

or obtaining such identifiers or information has been satisfied or within three years of the individual's [respective Lark Plaintiff's] last interaction with the private entity, whichever occurred first." Franchisees are alleged to have aggrieved Lark Plaintiffs by collecting and storing Lark Plaintiffs' biometric information without the proper development of a written policy that was made available to the public or establishing a retention schedule and guidelines for the permanent destruction of the biometric identifiers. Ex. A at ¶¶542-547, ¶¶948-953 & ¶¶1412-1417.

95.    Lark Plaintiffs allege they are Illinois citizens who had their "biometric information" collected and stored by Franchisees through copying or recording of their respective fingerprints or palm scans and possibly other biometric data points. It is also alleged that Franchisees violated BIPA by not complying with their established retention schedule and destruction guidelines, as required by 740 ILCS 14/15(a), and thus, violated Lark Plaintiffs' respective rights to control their own biometric information. *Id.* at ¶¶549-555, ¶¶955-961 & ¶¶1419-1425.

96.    Lark Plaintiffs assert that Franchisees are private entities that collected and stored certain "biometric information" from their workers by copying or recording their respective fingerprints, palm scans and possibly other data. Lark Plaintiffs likewise assert that Franchisees collected Lark Plaintiffs' biometric information, which is a violation of BIPA unless the particular Franchisee first "1) [i]nforms the subject…in writing that biometric identifier or biometric information is [was] being collected or stored…. 740 ICS 14/15(b)(1)." Franchisees allegedly violated BIPA and aggrieved each Lark Plaintiff and violated his or her respective rights to control his or her own biometric information by not first informing their workers in writing that the biometric information was being collected. *Id.* at ¶¶557-562, ¶¶ 963-968 & ¶¶1427-1432.

97.     Lark Plaintiffs assert that Franchisees are private entities that collected and stored certain "biometric information" from their workers by copying or recording their respective fingerprints, palm scans and possibly other data.  Lark Plaintiffs likewise assert that Franchisees collected their workers' biometric information, which is a violation of BIPA unless the particular Franchisee first "2) [i]nforms the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used. 740 ILCS 14/15(b)(2)."  Franchisees allegedly violated BIPA and violated Lark Plaintiffs' rights to control their own biometric information by not informing Lark Plaintiffs of the specific purpose and length of time for which the Franchisees were collecting, storing and using the Lark Plaintiffs' biometric information. *Id.* at ¶¶564-569, ¶¶970-975 & ¶¶1434-1439.

98.     Lark Plaintiffs assert that Franchisees are private entities that collected and stored certain "biometric information" from their workers by copying or recording their workers' respective fingerprints, palm scans and possibly other data.  Lark Plaintiffs likewise assert that Franchisees collected their workers' biometric information, which is a violation of BIPA unless the individual Franchisee first "3) [r]eceives a written release executed by the subject of the biometric information 740 ILCS 14/15(b)(3)."  Franchisees allegedly violated BIPA and violated Lark Plaintiffs' right to control their own biometric information by not obtaining a written release from Lark Plaintiffs prior to collecting the biometric information. *Id.* at ¶¶571-576, ¶¶977-982 & ¶¶1441-1446.

99.     Lark Plaintiffs assert that Franchisees are private entities that collected and stored certain "biometric information" from their workers by copying or recording their respective fingerprints, palm scans and possibly other data.  Lark Plaintiffs likewise assert that Franchisees collected Lark Plaintiffs' biometric information and subsequently violated BIPA when they

19

"[d]isclosed, redisclosed, or disseminated the biometric information of plaintiffs and the class members to, through, and/or among others, including but not limited to other McDonald's entities or persons associated with McDonald's. 740 ILCS 14/15(d)." Franchisees likewise allegedly violated BIPA and violated Lark Plaintiffs' right to control their own biometric data by disclosing or redisclosing Lark Plaintiffs' biometric information to other McDonald's entities or persons associated with McDonald's. *Id.* at ¶¶578-584, ¶¶984-990 & ¶¶1448-1454.

100.    Lark Plaintiffs allege that Franchisees are private entities that collected and stored biometric information from McDonald's workers.  Lark Plaintiffs also assert that Franchisees violated BIPA by failing to store, transmit and/or protect from full disclosure all biometric identifiers and biometric information, using the reasonable standard of care within Franchisees' industry standard as required by 740 ILCS 14/15(e)(1). *Id.* at ¶¶586-591, ¶¶992-997 & ¶¶1456-1461.  Lark Plaintiffs allege that Franchisees violated Lark Plaintiffs' right to control their own biometric data by failing to store, transmit and/or protect from full disclosure all biometric identifiers and biometric information by using the reasonable standard of care within Franchisees' industry standard.

101.    Lark Plaintiffs assert that Franchisees are private entities that collected and stored certain "biometric information" from their workers by copying or recording the workers' respective fingerprints, palm scans and possibly other data.  Lark Plaintiffs likewise assert that Franchisees collected their workers' biometric information and subsequently violated BIPA when Franchisees failed to collect and store Lark Plaintiffs' information in a "[m]anner that was the same as or more protective than the manner in which it stores, transmits, and protects other confidential and sensitive information, as required by 70 ILCS 14/15(e)(2)."  Franchisees also allegedly violated BIPA and violated Arthur Plaintiffs' right to control their biometric information

20

by not storing the biometric information in a manner that was the same as or more protective than the manner in which Franchisees store, transmit and protect other confidential and sensitive information. *Id.* at ¶¶593-598, ¶¶999-1004 & ¶¶1463-1468.

102.    In all counts, Lark Plaintiffs seek certification of the Lark Action as a class action; a declaration that Franchisees violated BIPA; 740 ILCS 14/1 et seq., injunctive and equitable relief to protect the Lark Plaintiffs' interests; statutory damages of $5,000 for each intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000 per violation pursuant to 740 ILCS 14/20(1) in the event the court finds that Franchisees' BIPA violations were negligent; reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3); and other relief deemed appropriate in the premises.

## B.    Arthur Action

103.    Plaintiffs in the Arthur Action ("Arthur Plaintiffs") allege that Defendants[5] share common liability, because each Defendant is part of the "McDonald's System," and as such, all Defendants are "[o]ffending parties within the meaning of BIPA, 740 ILCS 14/20." Exhibit B at ¶¶234-235.

104.    Arthur Plaintiffs refer to the "McDonald's Traditional Franchise Agreement," to further define the "McDonald's System," which explains:

### 1.    *Nature and Scope of Franchise.*

(a)    McDonald's operates a restaurant system ("McDonald's System"). The McDonald's System is a comprehensive system for the ongoing development, operation, and maintenance of McDonald's restaurant locations . . . and includes proprietary rights in certain valuable trade names, service marks, and trademarks .

---

[5] For purposes of this section, Defendants include McDonald's, and Franchisees, D.A.L.L. Anointed, KGK Management, Inc., and R&G Management, Inc. These Franchisees are Homeland insureds and defendants in the Arthur Action. Arthur Plaintiffs claim to be employees or former employees of both McDonald's and these Franchisees.

. . . methods of . . . operation control . . . and manuals covering business practices and policies.

*Id.* at ¶236.

105.    According to Arthur Plaintiffs, the McDonald's System also required that Franchisees adhere to standards, including the uniform operating procedures and equipment, as follows:

1.    ***Nature and Scope of Franchise . . .***

(c)    The foundation of the McDonald's System and the essence of this Franchise is the adherence by Franchisee to standards and policies of McDonald's providing for the uniform operation of all McDonald's restaurants within the McDonald's System including, but not limited to . . . the use of only prescribed equipment . . . . [T]he establishment and maintenance of a close personal working relationship with McDonald's in the conduct of Franchisee's McDonald's restaurant business, Franchisee's accountability for performance of the obligations contained in this Franchise, and Franchisee's adherence to the tenets of the McDonald's System constitute the essence of this Franchise.

*Id.* at ¶237.

106.    Arthur Plaintiffs allege that McDonald's and the Franchisees cooperated and acted jointly, because doing so was mutually beneficial, and the uniformity and control of equipment and processes was essential to McDonald's branding. *Id.* at ¶¶245-247.

107.    McDonald's and the Franchisees allegedly cooperated jointly, and in unison to improperly collect, capture, and otherwise mishandle workers' biometric identifiers or biometric information across the McDonald's System in Illinois. *Id.* at ¶¶246-247.

108.    Arthur Plaintiffs contend that while not every McDonald's location in the McDonald's System employed biometric capture devices, it is no coincidence that nearly every location in the McDonald's System used the Digital Persona U are U 4500 Fingerprint Reader. *Id.* at ¶250.

109.     Arthur Plaintiffs allege, based on information and belief, that all McDonald's undertake operations, including the collection of biometric information with McDonald's proprietary software and collection of biometric information, using McDonald's proprietary software, which McDonald's considers its own intellectual property.  It is similarly alleged that McDonald's would not permit non-approved software to be employed in the McDonald's System. *Id.* at ¶251.

110.     Arthur Plaintiffs argue in the alternative that McDonald's exercised, and continues to exercise, control over the Franchisees and their respective operations, including the facts and circumstances giving rise to the Arthur Action, such that each of them, and both, are liable jointly and severally for violations of BIPA occurring at any Illinois McDonald's, without further qualification, whether through operation of *respondeat superior*, the law of agency, alter ego, common law joint and several liability, joint employer, or other grounds.  *Id.* at ¶256.

111.     Arthur Plaintiffs further allege that McDonald's restaurant locations throughout Illinois utilized a finger or handprint reader to measure employees' time and attendance as the primary method to "clock-in" and "-out" at many but not all locations throughout Illinois.  For all present and past employees at those McDonald's locations, Defendants have allegedly required that their employees provide biometric information, specifically a scan of their respective finger and/or handprints. *Id.* at ¶272.

112.     Arthur Plaintiffs maintain, upon information and belief, that Defendants are violating BIPA in collecting and storing the biometric information of their employees at the restaurant locations that utilize biometric scanners (finger/hand print readers), as Defendants are not first informing employees in writing of the specific purpose and length of term for which their

biometric identifiers or biometric information are being collected, stored, and/or used; nor are Defendants first securing releases from their employees. *Id.* at ¶273.

113.     It is further alleged that Defendants' violations of BIPA are not occurring at just one location, nor are they being perpetrated in only one geography.  Defendants' violations of BIPA are allegedly occurring throughout the state of Illinois and have been occurring since Defendants' implementation of biometric scanners. *Id.* at ¶274.

114.     Arthur Plaintiffs allege there are common questions of law and fact as to the members of the class, as required by 735 ILCS 5/2-80, and likewise allege that certification of the class would aid judicial economy and efficiency and protect the interests of the class. *Id.* at ¶¶275-283.

### (a)     *Allegations Against McDonald's*

115.     McDonald's is alleged to have violated 740 ILCS 14/15(a) by failing to properly establish a publicly available biometric information collection and retention policy.  Arthur Plaintiffs assert that McDonald's is a "private entity" that collects biometric information from McDonald's workers, and is thus governed by BIPA.  Ex. B at ¶¶ 285-290.

116.     Arthur Plaintiffs maintain that BIPA requires private entities in possession of biometric information to "[d]evelop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of the individual's last interaction with the private entity, whichever occurs first." *Id.* at ¶¶285-290 & ¶¶343-348.  McDonald's allegedly violated BIPA and aggrieved Arthur Plaintiffs by neglecting to establish a retention schedule and guidelines for destroying its employees' biometric identifiers.

24

117. Arthur Plaintiffs allege they are Illinois citizens who had their "biometric information" collected and stored by McDonald's or its agents, *inter alia*, copying or recording of their respective fingerprints or palm scans and possibly other biometric data points. It is also alleged that McDonald's did not comply with its established retention schedule and destruction guidelines, as required by 740 ILCS 14/15(a). Arthur Plaintiffs allege that McDonald's violated Arthur Plaintiffs' respective rights to control their own biometric information by not complying with McDonald's established retention schedule and destruction guidelines. *Id*. at ¶¶292-298 & ¶¶350-356.

118. Arthur Plaintiffs assert that McDonald's is a private entity that collected and stored certain "biometric information" from its workers by copying or recording their respective fingerprints, palm scans and possibly other data. Arthur Plaintiffs likewise assert that McDonald's collected its workers' biometric information, which is a violation of BIPA unless McDonald's first "1) [i]nforms the subject…in writing that biometric identifier or biometric information is [was] being collected or stored…….. 740 ICS 14/15(b)(1)." McDonald's allegedly violated BIPA and aggrieved Arthur Plaintiffs by not first informing Arthur Plaintiffs in writing that their biometric information was being collected. *Id*. at ¶¶301-305 & ¶¶358-363.

119. Arthur Plaintiffs assert that McDonald's is a private entity that collected and stored certain "biometric information" from its workers by copying or recording their respective fingerprints, palm scans and possibly other data. Arthur Plaintiffs likewise assert that McDonald's collected its workers' biometric information, which is a violation of BIPA unless it first "2) [i]nforms the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used. 740 ILCS 14/15(b)(2)." McDonald's allegedly violated BIPA and violated Arthur Plaintiffs' right to control their biometric

25

information, by not informing Arthur Plaintiffs in writing of the specific purpose and length of term for which Arthur Plaintiffs' biometric identifier or biometric information was being collected, stored and used. *Id*. at ¶¶307-312 & ¶¶365-370.

120.     Arthur Plaintiffs assert that McDonald's is a private entity that collected and stored certain "biometric information" from its workers, by copying or recording their respective fingerprints, palm scans and possibly other data.  Arthur Plaintiffs likewise assert that McDonald's collected its workers' biometric information, which is a violation of BIPA unless it first "(3) [r]eceives a written release executed by the subject of the biometric information….." 740 ILCS 14/15(b)(3)."  McDonald's allegedly violated BIPA and violated Arthur Plaintiffs' rights to control their own biometric information by not obtaining a written release from Arthur Plaintiffs before McDonald's collected Arthur Plaintiffs' biometric information. *Id*. at ¶¶314-319 & ¶¶372-337.

121.     Arthur Plaintiffs assert that McDonald's is a private entity that collected and stored certain "biometric information" from its workers by copying or recording their respective fingerprints, palm scans and possibly other data.  Arthur Plaintiffs likewise assert that McDonald's collected its workers' biometric information and subsequently violated BIPA when it "[d]isclosed, redisclosed, or disseminated the biometric information of plaintiffs [Arthur Plaintiffs] and the class members to, through, and/or among others, including but not limited to other McDonald's entities or persons associated with McDonald's. 740 ILCS 114/15(d)."  McDonald's allegedly violated BIPA and violated Arthur Plaintiffs' rights to control their own biometric information by disclosing, redisclosing or disseminating Arthur Plaintiffs' biometric information to other McDonald's entities or persons associated with McDonald's.  *Id.* at ¶¶321- 327; ¶¶379-385.

122.     Arthur Plaintiffs assert that McDonald's is a private entity that collected and stored certain "biometric information" from its workers by copying or recording their respective

fingerprints, palm scans and possibly other data. Arthur Plaintiffs also assert that McDonald's violated BIPA and violated Arthur Plaintiffs' rights by failing to store, transmit and/or protect from full disclosure Lark Plaintiffs' biometric identifiers and biometric information, using the reasonable standard of care within its industry standard as required by 740 ILCS 14/15(e)(1). *Id.* at ¶¶329-334 & ¶¶387-392.

123.     Arthur Plaintiffs assert that McDonald's is a private entity that collected and stored certain "biometric information" from its workers by copying or recording their respective fingerprints, palm scans and possibly other data. Arthur Plaintiffs likewise assert that McDonald's collected its workers' biometric information and subsequently violated BIPA when it failed to collect and store Arthur Plaintiffs' information in a "[m]anner that was the same as or more protective than the manner in which it stores, transmits, and protects other confidential and sensitive information, as required by 70 ILCS 14/15(e)(2)." McDonald's likewise allegedly violated BIPA and violated Arthur Plaintiffs' rights to control their own biometric information, because McDonald's did not store Arthur Plaintiffs' information the same ore more protective manner that it stores other confidential and sensitive information. *Id.* at ¶¶336-341 & ¶¶394-399.

124.     In all counts, Arthur Plaintiffs seek certification of the Arthur Action as a class action; a declaration that Franchisees violated BIPA; 740 ILCS 14/1 et seq., injunctive and equitable relief to protect the Lark Plaintiffs' interests; statutory damages of $5,000 for each intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000 per violation pursuant to 740 ILCS 14/20(1) in the event the court finds that Franchisees' BIPA violations were negligent; reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3); and other relief deemed appropriate in the premises.

259285032v.1

### (b) *Allegations Against Franchisees*

125.    Arthur Plaintiffs allege that Franchisees violated 740 ILCS 14/15(a) by failing to properly establish a publicly available biometric information collection and retention policy. Arthur Plaintiffs assert that Franchisees are private entities that collect biometric information from McDonald's workers, and are thus governed by BIPA. Arthur Plaintiffs also maintain that BIPA requires private entities in possession of biometric information to "[d]evelop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of the individual's [respective Arthur Plaintiff's] last interaction with the private entity, whichever occurs first." Franchisees are alleged to have aggrieved Arthur Plaintiffs by collecting and storing Arthur Plaintiffs' biometric information without the proper development of a written policy that was made available to the public or establishing a retention schedule and guidelines for the permanent destruction of biometric identifiers.  Ex. B at ¶¶575-580, ¶¶2373-2378, ¶¶2431-2436, ¶¶2489-2494, ¶¶2786-2792, ¶¶5795-5800 & ¶¶9449-9454.

126.    Arthur Plaintiffs allege they are Illinois citizens that had their "biometric information" collected and stored by Franchisees through copying or recording of their respective fingerprints or palm scans and possibly other biometric data points. It is also alleged that Franchisees did not comply with its established retention schedule and destruction guidelines, as required by 740 ILCS 14/15(a), and thus, violated Arthur Plaintiffs' respective rights to control their own biometric information. *Id.* at ¶¶582-588, ¶¶2380-2386, ¶¶2438-2444, ¶¶2496-2502, ¶¶2786-2792, ¶¶5802-5808 & ¶¶9456-9462.

259285032v.1

127.     Arthur Plaintiffs assert that Franchisees are private entities that collected and stored certain "biometric information" from its workers by copying or recording their respective fingerprints, palm scans and possibly other data.  Arthur Plaintiffs likewise assert that Franchisees collected their workers' biometric information, which is a violation of BIPA unless the particular Franchisee first "1) [i]nforms the subject…in writing that biometric identifier or biometric information is [was] being collected or stored… 740 ICS 14/15(b)(1)."  Franchisees allegedly violated BIPA and aggrieved each Arthur Plaintiff and violated his or her respective rights to control his or her own biometric information by not informing their workers in writing that the biometric information was being collected. *Id.* at ¶¶590-595, ¶¶2388-2393, ¶¶2446-2451, ¶¶2504-2509, ¶¶2794-2799, ¶¶5810-5815 & ¶¶9464-9469.

128.     Arthur Plaintiffs assert that Franchisees are private entities that collected and stored certain "biometric information" from their workers by copying or recording their respective fingerprints, palm scans and possibly other data.  Arthur Plaintiffs likewise assert that Franchisees collected their workers' biometric information, which is a violation of BIPA unless the particular Franchisee first "2) [i]nforms the subject [respective Arthur Plaintiff] in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used. 740 ILCS 14/15(b)(2)."  Franchisees allegedly violated BIPA, and violated Arthur Plaintiffs' rights to control their own biometric information, by not informing Arthur Plaintiffs' of the specific purpose and length of time for which Franchisees were collecting, storing and using Arthur Plaintiffs' biometric information. *Id.* at ¶¶597-602, ¶¶2395-2400, ¶¶2453-2458, ¶¶2511-2516, ¶¶2801-2806, ¶¶5817-5822 & ¶¶9471-9476.

129.     Arthur Plaintiffs assert that Franchisees are private entities that collected and stored certain "biometric information" from their workers by copying or recording their respective

29

fingerprints, palm scans and possibly other data. Arthur Plaintiffs likewise assert that Franchisees collected its workers' biometric information, which is a violation of BIPA unless the respective Franchisee first "(3) [r]eceives a written release executed by the subject of the biometric information. 740 ILCS 14/15(b)(3)." Franchisees allegedly violated BIPA and violated Arthur Plaintiffs' right to control their own biometric information by not obtaining a written release from Arthur Plaintiffs prior to collecting the biometric information. *Id.* at ¶¶604-609, ¶¶2402-2407, ¶¶2460-2465, ¶¶2518-2523, ¶¶2808-2813, ¶¶5824-5829 & ¶¶9478-9483.

130.     Arthur Plaintiffs assert that Franchisees are private entities that collected and stored certain "biometric information" from their workers by copying or recording their respective fingerprints, palm scans and possibly other data. Arthur Plaintiffs likewise assert that Franchisees collected their workers' biometric information and subsequently violated BIPA when they "[d]isclosed, redisclosed, or disseminated the biometric information of plaintiffs and the class members to, through, and/or among others, including but not limited to other McDonald's entities or persons associated with McDonald's. 740 ILCS 14/15(d)." Franchisees likewise allegedly violated BIPA and violated Arthur Plaintiffs' right to control his or her own biometric information by disclosing or redisclosing Arthur Plaintiffs' biometric information to other McDonald's entities or persons associated with McDonald's. *Id.* at ¶¶611-617, ¶¶2409-2415, ¶¶2467-2473, ¶¶2525-2531, ¶¶2815-2821, ¶¶5821-5837 & ¶¶9485-9491.

131.     Arthur Plaintiffs allege that Franchisees are private entities that collected and stored biometric information from McDonald's workers. Arthur Plaintiffs also assert that Franchisees violated BIPA by failing to store, transmit and/or protect from full disclosure all biometric identifiers and biometric information, using the reasonable standard of care with Franchisees' industry standard as required by 740 ILCS 14/15(e)(1)." Lark Plaintiffs allege that Franchisees

30

violated Lark Plaintiffs' right to control their own biometric data by failing to store, transmit and/or protect from full disclosure all biometric identifiers and biometric information by using the reasonable standard within Franchisees' industry. *Id*. at ¶¶619-624, ¶¶2417-2422, ¶¶2475-2480, ¶¶2533-2538, ¶¶2823-2828, ¶¶5839-5844 & ¶¶9493-9498.

132.    Arthur Plaintiffs assert Franchisees are private entities that collected and stored certain "biometric information" from its workers by copying or recording their respective fingerprints, palm scans and possibly other data. Arthur Plaintiffs likewise assert that Franchisees collected its workers' biometric information and subsequently violated BIPA when Franchisees failed to collect and store Arthur Plaintiffs' information in a "[m]anner that was the same as or more protective than the manner in which it stores, transmits, and protects other confidential and sensitive information, as required by 70 ILCS 14/15(e)(2)." Franchisees also allegedly violated BIPA and violated Arthur Plaintiffs' right to control their biometric information by not storing the biometric information in a manner that was the same as or more protective than the manner in which Franchisees store, transmit and protect other confidential and sensitive information. *Id.* at ¶¶626-631, ¶¶2424-2429, ¶¶2482-2487, ¶¶2540-2545, ¶¶2830-2835, ¶¶5846-5851 & ¶¶9500-9505.

133.    In all Counts, Arthur Plaintiffs seek certification of the Arthur action as a class action; a declaration that Franchisees violated BIPA; 740 ILCS 14/1 et seq., injunctive and equitable relief to protect the Arthur Plaintiffs' interests; statutory damages of $5,000 for each intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000 per violation pursuant to 740 ILCS 14/20(1) in the event the court finds that Franchisees' BIPA violations were negligent; reasonable attorneys' fees and costs and

31

other litigation expenses pursuant to 740 ILCS 14/20(3); and other relief deemed appropriate in the premises.

## **THE POLICIES**

134. Homeland issued commercial general liability policies to the Franchisees (collectively, "Franchisee Policies") as follows:

| Insured | Policy Number | Policy Period |
|---|---|---|
| Clark Management, LLC | 6190000540000 | 3/1/15 – 3/1/16 |
| Clark Management, LLC | 6190000540001 | 3/1/16 – 3/1/17 |
| D.A.L.L. Anointed, Debt Free | 6190001690000 | 3/1/15 – 3/1/16 |
| D.A.L.L. Anointed, Debt Free | 6190001690001 | 3/1/16 – 3/1/17 |
| D.A.L.L. Anointed, Debt Free | 6190001690002 | 3/1/17 – 3/1/18 |
| G&KF Enterprises, Inc. | 6190002830000 | 3/1/15 – 3/1/16 |
| G&KF Enterprises, Inc. | 6190002830001 | 3/1/16 – 3/1/17 |
| G&L Foods, Inc. | 6190005020000 | 3/1/17 – 3/1/18 |
| J Family Corporation | 6190003050000 | 3/1/15 – 3/1/16 |
| Jann Restaurant, Inc. | 6190002140000 | 3/1/15 – 3/1/16 |
| Jann Restaurant, Inc. | 6190002140001 | 3/1/16 – 3/1/17 |
| Jann Restaurant, Inc. | 6190002140002 | 3/1/17 – 3/1/18 |
| Kasprzyk, Joseph | 6190004470000 | 3/1/16 – 3/1/17 |
| KGK Management, Inc. | 6190003090000 | 3/1/15 – 3/1/16 |
| KGK Management, Inc. | 6190005310000 | 3/1/17 – 3/1/18 |
| Kono Enterprises, Inc. | 6190002050000 | 3/1/15 – 3/1/16 |
| Lofton & Lofton Management, Inc. | 6190000390000 | 3/1/15 – 3/1/16 |
| Lofton & Lofton Management, Inc. | 6190000390001 | 3/1/16 – 3/1/17 |
| Lofton & Lofton Management, Inc. | 6190000390002 | 3/1/17 – 3/1/18 |
| MCL Corporation | 6190000400000 | 3/1/15 – 3/1/16 |

32

| MCL Corporation | 6190000400001 | 3/1/16 – 3/1/17 |
| MCL Corporation | 6190000400002 | 3/1/17 – 3/1/18 |
| MMJ Enterprises, Inc. | 6190002170000 | 3/1/15 – 3/1/16 |
| MMJ Enterprises, Inc. | 6190002170001 | 3/1/16 – 3/1/17 |
| MMJ Enterprises, Inc. | 6190002170002 | 3/1/17 – 3/1/18 |
| R&G Management | 6190001710000 | 3/1/15 – 3/1/16 |
| R&G Management | 6190001710001 | 3/1/16 – 3/1/17 |
| R&G Management | 6190001710002 | 3/1/17 – 3/1/18 |
| S.J. Lad, Inc. | 6190001370000 | 3/1/15 – 3/1/16 |
| S.J. Lad, Inc. | 6190001370001 | 3/1/16 – 3/1/17 |
| Spring Mac, Inc. | 6190004470001 | 3/1/17 – 3/1/18 |
| Swedeco, Inc. | 6190005400000 | 3/1/17 – 3/1/18 |

135. Per the McDonald's Tender Letter, McDonald's seeks coverage under the Franchisee Policies[6] pursuant to the additional insured endorsement that states as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED – GRANTOR OF FRANCHISE AND LANDLORD**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**
McDonald's Corp.; McDonald's Insurance Dept.
C/O Donna Martinotti
One McDonald's Plaza
Oak Brook, IL 60521

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

---

[6] The Franchisee Policies include the same operative terms and conditions at issue in this matter. In the interests of judicial economy, the forms and endorsements from the Franchisee Policies, which include the pertinent terms and conditions have been compiled and attached as Exhibit E.

33

> **SECTION II – WHO IS AN INSURED** is amended to include as an insured the person or organization shown in the Schedule above, but only with respect to their liability as grantor of a franchise and landlord to you

*See* Exhibit E at p. 9.

136.    McDonald's qualifies as an additional insured under the Franchisee Policies, subject to all other terms of the Franchisee Policies including those under the additional insured endorsement, as a "grantor of franchise," but only with respect to McDonald's liability as grantor of the franchise.

137.    Coverage A of the Franchisee Policies provide in part as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . .

*        *        *

> **b.** This insurance applies to "bodily injury" and "property damage" only if:

> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

*        *        *

Ex. E at p. 2.

138.    The terms "bodily injury," "property damage" and "occurrence" are defined in the Franchisee Policies as follows:

**SECTION V – DEFINITIONS**

*        *        *

34

**3**. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

$$* \qquad * \qquad *$$

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

$$* \qquad * \qquad *$$

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

$$* \qquad * \qquad *$$

Ex. E at p. 12-15.

    139.    Subject to all of the other terms of the Franchisee Policies, Coverage B of the

Franchisee Policies provide coverage as follows:

### COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

$$* \qquad * \qquad *$$

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

$$* \qquad * \qquad *$$

Ex. E at p. 6.

140.    Subject to all of the terms of the Franchisee Policies, Coverage B applies to "personal and advertising injury" caused by an offense that occurs during the policy period.

141.    The terms "personal and advertising injury" are defined in part in the Franchisee Policies as follows:

**SECTION V – DEFINITIONS**

**14.** "Personal and advertising injury" mean injury, including consequential "bodily injury", arising out of one or more of the following offenses:

*       *       *

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

*       *       *

Ex. E at p. 14.

142.    In addition, the Franchisees Policies include the following exclusions:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

*       *       *

**o.  Personal And Advertising Injury**

"Bodily injury" or "property damage" arising out of "personal and advertising injury".

*       *       *

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

*       *       *

**2.  Exclusions**

This insurance does not apply to:

**a.  Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

*       *       *

36

    **c.   Material Published Prior To Policy Period**

    "Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

*       *       *

Ex. E at p. 6.

    143.    Additionally, the allegations in the Underlying Actions implicate the application of the Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability Exclusionary Endorsement, which bars coverage under Coverage A and Coverage B for certain damages that arise from disclosure of personal information. The endorsement is contained in Form CG 21 06 05 14. The exclusion provides in part:

    **A.**  Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

      **2.  Exclusions**

      This insurance does not apply to:

      **p.  Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability**

      Damages arising out of:

      **(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

*       *       *

      This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** above.

    **B.**  The following exclusion is added to Paragraph **2., Exclusions** of Section I – **Coverage B – Personal and Advertising Injury Liability:**

      **2.  Exclusions**

37

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

\*       \*       \*

Ex. E at p. 16.

144. The allegations in the Underlying Actions implicate the application of the Employment-Related Practices Exclusionary endorsement, which is provides in part:

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person;

\*       \*       \*

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

38

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person;

*     *     *

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b) or (c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of that injury.

*     *     *

Ex. E at p. 17.

<strong><u>FIRST CLAIM FOR RELIEF</u></strong><br>
<strong>(Declaratory Judgment—Homeland Has No Duty to Defend or Indemnify McDonald's or Franchisees in the Underlying Actions Because There is No Bodily Injury or Property Damage Caused By An Occurrence.)</strong>

145.    Homeland realleges the allegations of paragraph 1 through 146 as if fully set forth herein.

146.    Underlying Plaintiffs seek monetary damages from Defendants, pursuant to the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq. ("BIPA"), and allege that Defendants illegally, collected, stored, and used the Underlying Plaintiffs' biometric identifiers without first obtaining informed written consent.

39

147.     Underlying Plaintiffs seek certification of the Underlying Actions pursuant to 735 ILCS 5/2-801, in addition to a declaration that Defendants violated BIPA, 740 ILCS 5/2-801, *et seq.*

148.     Underlying Plaintiffs likewise seek injunctive and equitable relief as necessary to protect the interests of the Underlying Plaintiffs and the class by requiring McDonald's to comply with the requirements of BIPA as to collection, storage and use of biometric data.

149.     Underlying Plaintiffs also seek statutory damages of $5,000 for the intentional reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000 per violation pursuant to 740 ICS 14/20(1) in the event the Court finds that Defendants' violations of BIPA were negligent, in addition to reasonable attorneys' fees and costs and other litigation expenses, pursuant to 740 ILCS 14/20(3) and any other relief deemed appropriate in the premises.

150.     The Franchisee Policies afford coverage, subject to all other terms and conditions, for "bodily injury" or "property damage" caused by an "occurrence."

151.     Underlying Plaintiffs' demand for a judgment declaring that Defendants violated BIPA, in addition to injunctive relief that would require Defendants to comply with the requirements of BIPA as to collection, storage and use of biometric data, is not "bodily injury" or "property damage" caused by an "occurrence" or accident, as defined by the Franchisee Policies.

152.     Underlying Plaintiffs' demand in the Underlying Actions for statutory damages pursuant to 740 ILCS 14/20(2) or alternatively, statutory damages pursuant to 740 ILCS 14/20(1), in addition to reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3), and any other relief deemed appropriate in the premises, is not "bodily injury" or "property damage" caused by an "occurrence" or accident, as defined by the Franchisee Policies.

153.     An actual and justiciable controversy currently exists between Defendants and Homeland, pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This Court is vested with the power to declare the rights and liabilities of the parties hereto with respect

to the Franchisee Policies and the Underlying Actions and to grant such relief as it deems necessary and proper.

## SECOND CLAIM FOR RELIEF
**(Declaratory Judgment—Homeland Has No Duty to Defend or Indemnify McDonald's or the Franchisees, Because There is No "Personal and Advertising Injury," As Defined By the Franchisee Policies.)**

154. Homeland realleges the allegations of paragraph 1 through 155 as if fully set forth herein.

155. Underlying Plaintiffs seek monetary damages pursuant to BIPA and allege that Defendants illegally collected, stored, and used the Underlying Plaintiffs' biometric identifiers without first obtaining informed written consent.

156. Defendants allegedly employ or employed the Underlying Plaintiffs and collected, captured, and stored, Underlying Plaintiffs' biometric identifiers, which Defendants used for the purpose of tracking Underlying Plaintiffs' time and attendance.

157. Underlying Plaintiffs allege that BIPA, 740 ILCS 14/15(a) and (b), prohibits private entities, such as Defendants, from obtaining and/or possessing an individual's biometrics unless the private entity: (1) informs that person in writing that the biometric identifier will be collected or stored; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used; (3) receives a written release from the person for the collection of his or her biometric identifiers or information; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information.

158. Underlying Plaintiffs maintain that Defendants violated BIPA by actively collecting, storing and using Underlying Plaintiffs' biometric identifiers without first providing notice or obtaining informed written consent. It is likewise alleged that Defendants' failed to publish data retention policies for the biometric identifier retention, also in violation of BIPA.

41

159.     Defendants' alleged unauthorized collection of employees' biometric identifiers is not "personal and advertising injury," as defined by the Franchisee Policies, nor was any injury caused by an offense that was committed in the "coverage territory" during the policy period.

160.     An actual and justiciable controversy currently exists between Defendants and Homeland, pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This Court is vested with the power to declare the rights and liabilities of the parties hereto with respect to the Franchisee Policies and the Underlying Actions and to grant such relief as it deems necessary and proper.

## THIRD CLAIM FOR RELIEF

**(Declaratory Judgment—Homeland Has No Duty to Defend or Indemnify McDonald's or the Franchisees, Because Coverage for Any "Personal and Advertising Injury" Is Excluded By the "Knowing Violation of Rights Of Another" Exclusion.)**

161.     Homeland realleges the allegations of paragraph 1 through 162 as if fully set forth herein.

162.     Underlying Plaintiffs seek monetary damages pursuant to BIPA and allege that Defendants illegally collected, stored, and used the Underlying Plaintiffs' biometric identifiers without first obtaining informed written consent.

163.     Underlying Plaintiffs allege that as early as October 11, 2017, McDonald's risk manager sent correspondence to the Franchisees to inform the Franchisees either using or beginning to use an "eSmartClock to allow employees to punch in and out using their fingerprint," of BIPA and the Franchisees' potential exposure to fines and penalties for BIPA violations.

164.     Underlying Plaintiffs likewise allege that as early as October 11, 2017, McDonald's Risk Manager offered the services of LaPointe Law firm to Franchisees, in order to provide "[e]mployment law advice through the Helpline, which is part of RSUI's National EPLI Program."

42

165.    Defendants allegedly employ or employed the Underlying Plaintiffs and collected, captured, and stored, Underlying Plaintiffs' biometric identifiers, which Defendants used for the purpose of tracking Underlying Plaintiffs' time and attendance.

166.    Underlying Plaintiffs allege that BIPA, 740 ILCS 14/15(a) and (b), prohibits a private entities, such as Defendants, from obtaining and/or possessing and individual's biometrics unless the private entity: (1) informs that person in writing that the biometric identifier will be collected or stored; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used; (3) receives a written release from the person for the collection of his or her biometric identifiers or information; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information.

167.    For those allegedly intentional and reckless BIPA violations committed by Defendants, Underlying Plaintiffs seek $5,000 per violation, pursuant to 740 ILCS 14/20(2). Underlying Plaintiffs also seek statutory damages of $5,000 for the intentional reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000 per violation pursuant to 740 ICS 14/20(1), in the event the Court finds that Defendants' violations of BIPA were negligent, in addition to reasonable attorneys' fees and costs and other litigation expenses, pursuant to 740 ILCS 14/20(3) and any other relief deemed appropriate in the premises.

168.    Pursuant to the Franchisee Policies, any alleged "'personal and advertising injury'" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" is excluded from coverage.

43

169.    Because McDonald's allegedly notified Franchisees of exposure to BIPA liability with the use of the "eSmart Clock," McDonald's and Franchisees knew as early as October 2017 that Defendants would violate the rights of employees, including Underlying Plaintiffs, by using the "eSmart Clock," without first consulting with counsel to ensure BIPA compliance.

170.    If Defendants' alleged BIPA violations were "personal and advertising injury," such personal and advertising injury would be excluded from coverage by the Franchisee Policies' "knowing violation of rights of another" exclusion.

171.    An actual and justiciable controversy currently exists between Defendants and Homeland, pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This Court is vested with the power to declare the rights and liabilities of the parties hereto with respect to the Franchisee Policies and the Underlying Actions and to grant such relief as it deems necessary and proper.

## FOURTH CLAIM FOR RELIEF
**(Declaratory Judgment—Homeland Has No Duty to Defend or Indemnify McDonald's or the Franchisees, Because Coverage for Any "Personal and Advertising Injury" Is Excluded By the Prior Publication Exclusion.)**

172.    Homeland realleges the allegations of paragraph 1 through 173 as if fully set forth herein

173.    It is alleged that the Defendants collected their workers' biometric information and subsequently violated BIPA when they "[d]isclosed, redisclosed, or disseminated the biometric information of plaintiffs and the class members to, through, and among others, including but not limited to other McDonald's entities or persons associated with McDonald's" 740 ILCS 114/15(d)

174.    Pursuant to the Franchisee Policies, any alleged "'personal and advertising injury' arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period," is excluded from coverage.

175.    If the alleged disclosure, redisclosure or dissemination of the Underlying Plaintiffs' biometric information is "personal and advertising injury," arising out of oral or written publication of material prior to the respective Franchisee Policy period, the "personal and advertising injury" is excluded from coverage by the "prior publication" exclusion.

176.    An actual and justiciable controversy currently exists between Defendants and Homeland, pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court is vested with the power to declare the rights and liabilities of the parties hereto with respect to the Franchisee Policies and the Underlying Actions and to grant such relief as it deems necessary and proper.

### FIFTH CLAIM FOR RELIEF
**(Declaratory Judgment—Homeland Has No Duty to Defend or Indemnify McDonald's or the Franchisees, Because Coverage for Any "Property Damage" Is Excluded By the Access or Disclosure of Confidential or Personal Information and Data-Related Liability Exclusion.)**

177.    Homeland realleges the allegations of paragraph 1 through 178 as if fully set forth herein.

178.    Underlying Plaintiffs assert that Defendants accessed, collected and stored their workers' biometric identifiers and biometric information by copying or recording the workers' respective fingerprints, palm scans and possibly other data without the workers' informed written consent.

179.    It is also alleged that Defendants "[d]isclosed, redisclosed, or disseminated the biometric information of plaintiffs and the class members to, through, and among others, including

but not limited to other McDonald's entities or persons associated with McDonald's" 740 ILCS 114/15(d)

180.     The Franchisee Policies exclude coverage, in part, for any "property damage" arising out of, "[A]ny access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secreta, processing methods, customer lists, financial lists, financial information, credit card information, health information or any other type of nonpublic information."

181.     Damages arising out of Defendants' access to and disclosure of Underlying Plaintiffs' biometric information through the copying or recording of the workers' respective fingerprints, palm scans and possibly other data, is excluded from coverage by the "access or disclosure of confidential or personal information data-related liability" exclusion.

182.     An actual and justiciable controversy currently exists between Defendants and Homeland, pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This Court is vested with the power to declare the rights and liabilities of the parties hereto with respect to the Franchisee Policies and the Underlying Actions and to grant such relief as it deems necessary and proper.

### SIXTH CLAIM FOR RELIEF
**(Declaratory Judgment—Homeland Has No Duty to Defend or Indemnify McDonald's or the Franchisees, Because Coverage for Any "Personal and Advertising Injury" Is Excluded By the Access or Disclosure of Confidential or Personal Information and Data-Related Liability Exclusion.)**

183.     Homeland realleges the allegations of paragraph 1 through 184 as if fully set forth herein.

184.     Underlying Plaintiffs assert that Defendants accessed, collected and stored their workers' biometric identifiers and biometric information by copying or recording the workers'

respective fingerprints, palm scans and possibly other data without the workers' informed written consent.

185.     It is also alleged that Defendants "[d]isclosed, redisclosed, or disseminated the biometric information of plaintiffs and the class members to, through, and among others, including but not limited to other McDonald's entities or persons associated with McDonald's" 740 ILCS 114/15(d).

186.     The Franchisee Policies exclude coverage, in part, for any "personal and advertising injury" "[a]rising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secreta, processing methods, customer lists, financial lists, financial information, credit card information, health information or any other type of nonpublic information."

187.     Injuries arising out of Defendants' access to and disclosure of their workers' biometric information through the copying or recording of the workers' respective fingerprints, palm scans and possibly other data, is excluded from coverage by the "access or disclosure of confidential or personal information data-related liability" exclusion.

188.     An actual and justiciable controversy currently exists between Defendants and Homeland, on the other hand, pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This Court is vested with the power to declare the rights and liabilities of the parties hereto with respect to the Franchisee Policies and the Underlying Actions and to grant such relief as it deems necessary and proper.

**SEVENTH CLAIM FOR RELIEF**

**(Declaratory Judgment—Homeland Has No Duty to Defend or Indemnify McDonald's or the Franchisees, Because Coverage for Any "Bodily Injury and Property Damage Liability" Is Excluded By the Employment-Related Practices Exclusion.)**

189. Homeland realleges the allegations of paragraph 1 through 190 as if fully set forth herein.

190. Underlying Plaintiffs allege that BIPA, 740 ILCS 14/15(a) and (b), prohibits a private entity such as McDonald's from obtaining and/or possessing an individual's biometrics unless it: (1) informs that person in writing that the biometric identifier will be collected or stored; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used; (3) receives a written release from the person for the collection of his or her biometric identifiers or information; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information.

191. Defendants allegedly employ or employed the Underlying Plaintiffs and claim that McDonald's collected, captured, stored and used the Underlying Plaintiffs' biometric for the purpose of tracking time and attendance while they worked for Defendants.

192. Underlying Plaintiffs assert that Defendants violated BIPA by collecting, storing and using their biometric identifiers without first providing notice or obtaining informed written consent. It is likewise alleged that Defendants failed to publish data retention policies for the biometric identifier retention, also in violation of BIPA.

193. Underlying Plaintiffs also maintain that McDonald's greatly influences the Franchisees' hiring practices and operations, including influence and control over handling of biometric information, which is why Defendants are alleged to share common BIPA liability, and all Defendants are allegedly "[o]ffending parties within the meaning of BIPA, 740 ILCS 14/20."

48

194. Underlying Plaintiffs refer to the "McDonald's Traditional Franchise Agreement," to further define the "McDonald's System," which states in relevant part, "[T]he McDonald's System is a comprehensive system for the ongoing development, operation, and maintenance of McDonald's restaurant locations….and includes proprietary rights in certain valuable trade names, service marks, and trademarks…. methods of operation….operation control…. and manuals covering business practices and policies".

195. The Franchisee Policies exclude coverage, in part, for any "Bodily Injury and Property Damage Liability" to a person arising out of, "[E]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person."

196. Defendants' alleged participation in the comprehensive McDonald's system for ongoing development, operations, maintenance, and the use of manuals covering business practices and policies, including the use of the "eSmartClock," to allow employees to punch in and out using their fingerprint, is allegedly part of McDonald's business practices and policies.

197. Because Underlying Plaintiffs' alleged injuries arose out of Defendants' employment-related practices and policies, specifically the purported collection and retention of its employees' biometric information in violation of BIPA, the "Employment-Related Practices" exclusion precludes any coverage for damages or injuries to Defendants under the Franchisee Policies.

198. An actual and justiciable controversy currently exists between Defendants and Homeland, on the other hand, pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court is vested with the power to declare the rights and liabilities of the

49

parties hereto with respect to the Franchisee Policies and the Underlying Actions and to grant such relief as it deems necessary and proper.

## EIGHTH CLAIM FOR RELIEF
**(Declaratory Judgment—Homeland Has No Duty to Defend or Indemnify McDonald's or the Franchisees, Because Coverage for Any "Personal and Advertising Injury Liability" Is Excluded By the Employment-Related Practices Exclusion.)**

199.    Homeland realleges the allegations of paragraph 1 through 200 as if fully set forth herein.

200.    Underlying Plaintiffs allege that BIPA, 740 ILCS 14/15(a) and (b), prohibits a private entity such as McDonald's from obtaining and/or possessing an individual's biometrics unless it: (1) informs that person in writing that the biometric identifier will be collected or stored; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used; (3) receives a written release from the person for the collection of his or her biometric identifiers or information; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information.

201.    Defendants allegedly employ or employed the Underlying Plaintiffs and claim that McDonald's collected, captured, stored and used the Underlying Plaintiffs' biometric identifiers for the purpose of tracking time and attendance while they worked for Defendants.

202.    Underlying Plaintiffs assert that Defendants violated BIPA by actively collecting, storing and using their biometric identifiers without first providing notice or obtaining informed written consent.  It is likewise alleged that Defendants failed to publish data retention policies for the biometric identifier retention, also in violation of BIPA.

203.    Underlying Plaintiffs also maintain that McDonald's greatly influences the Franchisees' hiring practices and operations, including influence and control over handling of

biometric information, which is why Defendants are alleged to share common BIPA liability, and all Defendants are allegedly "[o]ffending parties within the meaning of BIPA, 740 ILCS 14/20."

204.    Underlying Plaintiffs refer to the "McDonald's Traditional Franchise Agreement," to further define the "McDonald's System," which states in relevant part, "[T]he McDonald's System is a comprehensive system for the ongoing development, operation, and maintenance of McDonald's restaurant locations….and includes proprietary rights in certain valuable trade names, service marks, and trademarks…. methods of operation….operation control…. And manuals covering business practices and policies".

205.    The Franchisee Policies exclude coverage, in part, for any "Personal and Advertising Injury Liability" to a person arising out of, "[E]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person."

206.    Defendants' alleged participation in the comprehensive McDonald's system for ongoing development, operations, maintenance, and the use of manuals covering business practices and policies, including the use of the "eSmartClock," to allow employees to punch in and out using their fingerprint," is allegedly part of McDonald's business practices and policies.

207.    Because Underlying Plaintiffs' alleged injuries arose out of Defendants' employment-related practices and policies, specifically the purported collection and retention of its employees' biometric information in violation of BIPA, the "Employment-Related Practices" exclusion precludes any coverage for damages or injuries to Defendants under the Franchisee Policies.

208.    An actual and justiciable controversy currently exists between McDonald's and Franchisees on one hand, and Homeland, on the other hand, pursuant to the Uniform Declaratory

Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court is vested with the power to declare the

rights and liabilities of the parties hereto with respect to the Franchisee Policies and the Underlying

Actions and to grant such relief as it deems necessary and proper.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Homeland Insurance Company of New York prays as follows:

1. For a declaration that Homeland has no duty to defend McDonald's and Franchisees
in the Underlying Actions;

2. For a declaration that Homeland has no duty to indemnify McDonald's and
Franchisees in the Underlying Actions;

3. All other relief deemed appropriate by this Court.

DATE: September 24, 2021                  Respectfully submitted,

INTACT U.S. COVERAGE LITIGATION
GROUP

By: */s/ Michael J. Duffy*
Attorneys for Plaintiff
Homeland Insurance Company of New York

Greta A. Matzen
INTACT U.S. COVERAGE LITIGATION
GROUP
188 Inverness Drive West, Suite 600
Englewood, CO 80112
Tel: (781) 332-7101
gmatzen@intactinsurance.com
Attorney No. 6307545

Michael J. Duffy
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
55 West Monroe Street, Suite 3800
Chicago, IL 60603
Tel: (312) 704-0550

259285032v.1

michael.duffy@wilsonelser.com
Attorney No. 6196669

53